Stephen A. Watkins
sawatkins@gsrm.com
GORDON REES SCULLY MANSUKHANI, LLP
633 W 5th St 52nd Fl,
Los Angeles, CA 90071
Phone: (213) 576-5000

*Attorneys for Defendant,*
*The J.G. Wentworth Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RAMADAN ROUBY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>J.G. WENTWORTH COMPANY, a Delaware corporation,<br><br>Defendant. | Case No.: 4:26-cv-3082-HSG<br><br>**DEFENDANT THE J.G. WENTWORTH COMPANY'S: (1) NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; AND (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 1, 2026<br>Time: 2:00 p.m.<br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Ctrm: 2, 4th Floor<br><br>First Amended Complaint<br>Filed: May 18, 2026 |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 1, 2026 at 2:00 p.m., before the Honorable Haywood S. Gilliam, Jr., United States District Court, Courtroom 2, 4th Floor, 1301 Clay Street Oakland, CA 94612, Defendant The J.G. Wentworth Company ("JGW") will and hereby does move for an order dismissing Plaintiff Ramadan Rouby's ("Plaintiff") First Amended Complaint (Dkt. 12) for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should dismiss the First Amended Complaint pursuant to Rule 12(b)(1) for lack of Article III injury.

Whether the Court should dismiss the First Amended Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: August 7, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Stephen A. Watkins*

Stephen Watkins

Attorneys for Defendant

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

A. The JGW Application Process ........ 2

B. JGW's Privacy Policy ........ 3

C. How Plaintiff Alleges His Information Was Collected ........ 5

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 6

A. Plaintiff Lacks Article III Standing ........ 6

1. Plaintiff Cannot Establish Article III Standing Based on Generalized Allegations About the Website ........ 8

2. Plaintiff Lacks Article III Standing For Claims Relating to Meta ........ 8

B. Plaintiff lacks standing to seek injunctive relief ........ 9

C. Plaintiff's Claims Fails Because He Consented to the Capture of His Information ........ 10

D. Plaintiff Failed to State a Claim for Violation of CIPA Section 631 (Count I). ... 14

1. JGW is not directly liable because it is a party to the communication. ...... 14

2. The first clause of CIPA Section 631(a) does not apply to communications over the internet. ........ 15

3 Plaintiff's claims of real-time interception are conclusory ........ 15

4. Plaintiff fails to allege communication was read while in transit. ........ 16

5. Plaintiff has failed to allege he engaged in interactions with Defendant's emails and website that generated protected "content" with respect to Meta ........ 16

E. Plaintiff's ECPA Claim Must Fail ........ 17

F. Plaintiff's 632 Claim Must Fail ........ 17

G. Plaintiff's Intrusion Upon Seclusion Claim Fails ............................................... 18

H. Plaintiff's Negligence Claim Fails ....................................................................... 18

V. CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

*Aliotti v. R. Dakin & Co.*,
831 F.2d 898 (9th Cir. 1987) ........ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007). ........ 5

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 18

*Carolus v. Nexstar Media* Inc.,
No. 24-CV-07790-VC, 2025 WL 1338193,
(N.D. Cal. Apr. 9, 2025) ........ 8,19

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ........ 9

*Corona v. Sony Pictures Ent., Inc.,*
No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ........ 18

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 16

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 10

*Friedman v. Pacific Outdoor Advertising Co.*,
74 Cal. App. 2d 946 (1946) ........ 10

*Hameed-Bolden v. Forever 21 Retail*, Inc.,
2018 WL 6802818 (C.D. Cal. 2018) ........ 19

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........ 6

*Kokkonen v. Guardian Life Ins. of Am.*,
511 U.S. 375 (1994) ........ 6

*I.C. v. Zynga, Inc.,*
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........ 8

*In re Google RTB Consumer Priv. Litig.,*
606 F. Supp. 3d 935 (N.D. Cal. 2022). ........ 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ........ 6

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 10

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 17

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ........ 12

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023); ........ 15

*Leadsinger, Inc. v. BMG Music Publ'g*,
512 F.3d 522 (9th Cir. 2008) ........ 6

*Lingad v. Indymac Fed. Bank*,
682 F. Supp. 2d 1142 (E.D. Cal. 2010) ........ 12

*Lloyd v. Facebook, Inc.*,
2023 WL 1802415 (N.D. Cal. Feb. 7, 2023),
aff'd in relevant part, 2024 WL 3325389 (9th Cir. Jul. 8, 2024) ........ 13,14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992). ........ 6,7

*Meta Platforms, Inc. v. Nguyen*,
2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) ........ 13

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........ 5

*Nayab v. Cap. One Bank (USA), N.A.*,
942 F.3d 480 (9th Cir. 2019) ........ 18

*NovelPoster v. Javitch Canfield Grp.*,
*140 F. Supp. 3d 954 (N.D. Cal. 2014)* ........ 17

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder,*
676 F.3d 829 (9th Cir. 2012) ........ 16

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........ 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025). .......... 7,9,18

*Revitch v. New Moosejaw, Inc., LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).......... 18

*Rodriguez v. Brushfire Recs.*,
No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 8

*Rodriguez v. Google LLC,*
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 15

*Hodgers–Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999).......... 10

*Racies v. Quincy Bioscience, LLC*,
No. 15-CV-00292-HSG, 2015 WL 2398268 (N.D. Cal. May 19, 2015) .......... 10

*Ramos v. Gap, Inc.*,
No. 23-CV-04715-HSG, 2025 WL 2144837 (N.D. Cal. July 29, 2025) .......... 8,15

*R.C. v. Walgreen Co.,*
733 F.Supp.3d 876 (C.D. Cal. 2024) .......... 19

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004).......... 6

*Sanchez v. Cnty. of Los Angeles*,
No. CV177218DMGJEMX, 2019 WL 4180014,(C.D. Cal. Apr. 24, 2019) .......... 16

*Schallert v. Laird Superfood, Inc.*,
No. 2:25-CV-12407-SPG-PVC, 2026 WL 1707585 (C.D. Cal. June 5, 2026) .......... 8

*Spokeo, Inc. v. Robbins*,
578 U.S. 330 (2016).......... 7

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) .......... 10,13

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023). .......... 17

*Timothee v. Meta Platforms, Inc.*,
No. 25-CV-05106-LB, 2026 WL 1130363 (N.D. Cal. Apr. 27, 2026).......... 9

*Vess v. Ciba-Geigy Corp*.,
317 F.3d 1097 (9th Cir. 2003) ........ 6

*Warren v. Fox Family Worldwide, Inc*.,
328 F.3d 1136 (9th Cir. 2003) ........ 5

*Wells Fargo Bank, N.A. v. Renz,*
795 F. Supp. 2d 898 (N.D. Cal. 2011) ........ 18

*Williams v. Apple, Inc*.,
No. 19-CV-04700-LHK, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ........ 6

*Williams v. DDR Media, LLC*,
No. 22-CV-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ........ 16

**Rules and Statutes**

Fed. R. Civ. P. 9(b). ........ 5
Cal. Penal Code § 631(a). ........ 14,15,17

Defendant The J.G. Wentworth Company ("Defendant" or "JGW") submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the First Amended Complaint (Dkt. No. 12) ("FAC") filed by Plaintiff Ramadan Rouby ("Plaintiff").

## I. INTRODUCTION

JGW provides customized solutions and personal support to customers in need of a fresh financial start. Plaintiff contends that JGW contracts with vendors Meta and Segment to track users' interactions with JGW. Although Plaintiff provided his consent to this tracking, Plaintiff brings claims against Defendant for violation of the Electronic Communication Privacy Act ("ECPA"), violation of the California Invasion of Privacy Act ("CIPA"), intrusion upon seclusion, breach of confidence and negligence.

Even accepting Plaintiff's allegations as true for purposes of this motion, Plaintiff fails to state a claim.

***First***, Plaintiff's FAC lacks Article III jurisdiction. Plaintiff fails to allege sufficient facts as to his specific interaction with JGW's website to confer Article III jurisdiction. Instead, his defective FAC focuses on generalized allegations of the type of data that could be collected from website visitors. Moreover, the URL and c_user information alleged to captured by Meta do not implicate any Article III privacy interest. And he does not allege any imminent future injury to justify injunctive relief.

***Second***, Plaintiff's FAC does not state a claim under any cause of action because he consented to tracking by Meta and Segment.

***Third***, Plaintiff does not state a ECPA and/or CIPA Section 631 claim because Defendant is exempt from liability as a party to the website communications at issue. Moreover, the first clause of Section 631(a) does not apply to communications over the internet, Plaintiff fails to allege that any communication was intercepted and read in real time, nor Plaintiff has pled that his communications with Meta generated protected "content." Plaintiff's theories of liability based on aiding and abetting Meta and Segment and using information therefrom fail accordingly.

***Fourth***, Plaintiff's Section 632 claims will fail because he has not overcome the presumption that internet communications are not private.

***Fifth***, Plaintiff does not state a claim for intrusion upon seclusion because his consent also establishes that a reasonable person would not consider the information collected "highly offensive."

***Sixth***, Plaintiff does not state a claim for negligence because his alleged economic injury for diminished value of his information is speculative and barred by the economic loss rule. Moreover, any alleged breach did not cause harm via contact from fourth party advertisers as his conclusory allegations of emotional distress fail to state a claim.

Plaintiff's FAC should be dismissed without leave to amend.

## II. FACTUAL BACKGROUND

### A. The JGW Application Process.

Plaintiff alleges that he provided financial information in conjunction with an application for a debt consolidation loan. (FAC ¶¶ 62, 63) The start of that process is set forth in the following screenshots.




**(Figure 1)**

(FAC ¶ 26 & Fig. 1)




**(Figure 2)**

(FAC ¶ 51 & Fig. 2)

The final step in this process before one presses "submit" is reflected in the screenshots:







(Declaration of Stephen A. Watkins, Ex. 14)[1]

Here, the user is required to assent to JGW's Privacy Policy before submitting his or her final information.

**B. <u>JGW's Privacy Policy</u>.**

In the Privacy Policy, JGW informs the user that the types of information provided include financial information:

> **Financial Qualification Information**, including financial qualification information for debt services that includes estimates of personal consumer debt. This may include information about employment status, your approximate credit rating, highest level of education, marriage status, or other similar information.
>
> **Commercial Information**, including records of personal property, products or services purchased, obtained, or considered, or other purchasing or consuming histories or tendencies.

(Watkins Decl., Ex. 15) (emphasis added).

---

[1] These exhibits are also the subject to JGW's Request for Judicial Notice, filed concurrently herewith.

JGW also informs the User of "Information We Collect Automatically":

> When you visit or browse our website, we and our advertising, marketing, or service partners may collect information such as your IP address, the URL of the web pages you visit, and may use tracking technologies to collect statistical and other information about your use of our website and other websites (collectively, "Tracking Technologies").

(Ex. 15)

These "Tracking Technologies" include the following:

> Log Files, which are files that record events that occur in connection with your use of the Site.
>
> Cookies, which are small data files stored on your device that act as a unique tag to identify your browser. We use two types of cookies: session cookies and persistent cookies. Session cookies make it easier for you to navigate our website and expire when you close your browser. Persistent cookies help with personalizing your experience, remembering your preferences, and supporting security features. Additionally, persistent cookies allow us to bring you advertising both on and off the Site. Persistent cookies may remain on your device for extended periods of time, and generally may be controlled through your browser settings.
>
> Pixels (also known as web beacons), which is code embedded in a website, video, email, or advertisement that sends information about your use to a server. There are various types of pixels, including image pixels (which are small graphic images) and JavaScript pixels (which contains JavaScript code). When you access a website, video, email, or advertisement that contains a pixel, the pixel may permit us or a separate entity to drop or read cookies on your browser. Pixels are used in combination with cookies to track activity by a particular browser on a particular device. We may incorporate pixels from separate entities that allow us to track our communications, bring you advertising both on and off the Site.

(Ex. 15)

Finally, JGW discloses that personal information is disclosed to third parties:

> We disclose your personal information to third parties for a variety of purposes, including to provide our Services or operate our business, to protect us or others, or in the equivalent of a major business transaction such as a merger, sale, or asset transfer, as described below. We do not sell your personal communication consent or communication opt-in data for marketing purposes.

(Ex. 15)

### C. How Plaintiff Alleges His Information Was Collected.

The descriptions in JGW's Privacy Policy align with how Plaintiff describes generally how information was captured by Meta or Segment. The information described in the Privacy Policy also contemplates the specific information relating to Plaintiff that he provided to JGW.

With respect to the Meta Pixel, Plaintiff alleges it collects on JGW's website: (1) descriptive URLs revealing the product or service that the consumer is requesting (i.e. a debt consolidation or personal loan); and (2) the requested cash out amount. (FAC ¶ 53) According to Plaintiff, the Meta Pixel also collects a persistent identifier called the "c user" ID which specifically identifies the consumer to Meta. (FAC ¶ 53)

Additionally, Plaintiff generally contends Segment collects the following information: (1) Name; (2) Address; (3) Date of Birth; (4) Contact information; (5) Income; (6) Employment Status; (7) Rent or Owns; and (8) How Much Money Needed. (FAC ¶ 54)

Plaintiff agreed to collection by third parties of the information set forth in his FAC.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires Plaintiff to "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a pleading that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not do. *Id.* (citation omitted). The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003) (quotations and citation omitted). Where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," courts must dismiss plaintiffs' claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Further, as to any fraud-based claims, Plaintiff must satisfy not only the plausibility requirement, but also the particularity requirement of Rule 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

The allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Moreover, "'the plaintiff must plead facts explaining why the statement was false when it was made.'" *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942, 953 (S.D. Cal. 2012).

Plaintiff also bears the burden of establishing standing and subject matter jurisdiction to survive a Rule 12(b)(1) challenge. *See, e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am*., 511 U.S. 375, 377 (1994) (citations omitted). In a facial challenge pursuant to Rule 12(b)(1), the challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Leave to amend generally shall be denied if allowing amendment would be futile, if the moving party has acted in bad faith, or if allowing amendment would unduly prejudice the opposing party. *Williams v. Apple, Inc*., No. 19-CV-04700-LHK, 2020 WL 6743911, at *5 (N.D. Cal. Nov. 17, 2020) (quoting *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)).

## IV. <u>ARGUMENT</u>

### A. <u>Plaintiff Lacks Article III Standing</u>.

Plaintiff fails to plausibly allege a cognizable Article III privacy injury. Article III standing requires (1) a concrete and particularized injury-in-fact, (2) fairly traceable to the defendant's conduct, and (3) likely redressable by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.' " *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.' " *Id*. (quoting *Lujan*, 504 U.S. at 560 n.1).

For an injury to be concrete, it "must be 'de facto'; that is, it must actually exist" and be " 'real,' and not 'abstract.' " *Id*. (citing dictionaries). " 'Concrete' is not ... necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, ... intangible injuries can nevertheless be concrete." *Id*. at 340 (cleaned up). Courts must "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp*., 153 F.4th 784, 791 (9th Cir. 2025). This occurs in the privacy context where the alleged harm is "similar to the highly offensive interferences or disclosures that were actionable at common law." *Id.* (cleaned up). "An exact duplicate is not required" but rather "a match only in the kind of harm and not the degree." *Id.* (cleaned up).

Last year, the Ninth Circuit addressed when disclosure of personal information constitutes an injury in fact. The court held the plaintiff's injury was not sufficiently concrete when she alleged a website's use of Microsoft Clarity's "session-replay technology" violated statutory and common law privacy laws. *See Popa*, 153 F.4th at 786-87. Clarity's technology allowed businesses to "intercept[ ] and record[ ] the website visitor's electronic communications with the... website, including their mouse movements, clicks, keystrokes ... , URLs of web pages visited, and/or other electronic communications in real time." *Id.* at 786. The plaintiff alleged Clarity collected information about her mailing address and what pet supplies she browsed, ultimately "creat[ing] a video replay of [her] behavior on the website and provid[ing] it to [the defendant] for analysis." *Id.* However, because she identified "no embarrassing, invasive, or otherwise private information collected by Clarity," she did "not explain how the tracking of her interactions with the ... website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' inferences or disclosures that were actionable at common law." *Id.* at 791. The Ninth Circuit therefore concluded she failed to allege an injury in fact sufficient for Article III standing. *Id.* at 795. Similarly, Plaintiff lacks standing as set forth below.

**1. <u>Plaintiff cannot establish Article III standing based on generalized allegations about the website</u>.**

Plaintiff's claims fail to establish Article III standing as he almost exclusively relies upon general allegations of how JGW captures information—not his specific experience. *See, e.g.*, *Schallert v. Laird Superfood, Inc*., No. 2:25-CV-12407-SPG-PVC, 2026 WL 1707585, at *5 (C.D. Cal. June 5, 2026) (dismissing Section 631(a) claim for lack of standing). In contrast to the multiple paragraphs as to how JGW's website operates *in general* (FAC ¶¶ 50-61), Plaintiff provides one paragraph asserting that he provided information while on JGW's website. (FAC ¶ 62) However, the FAC includes no information about what specific information was captured from him during this interaction. In short, "The remainder of the FAC is filled with vague and generalized allegations of the type of data that the…tracking pixel is capable of collecting from website visitors." *Rodriguez v. Brushfire Recs*., No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (dismissing 631(a) complaint for lack of standing).

**2. <u>Plaintiff lacks Article III standing for claims relating to Meta</u>.**

Plaintiff's FAC fails to establish how the limited collection of information by Meta confers Article III standing. To the contrary, Courts have held that the transmission of a Facebook ID does not carry a privacy interest. *See I.C. v. Zynga, Inc.,* 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (holding disclosure of an internet user's Facebook username, email address, or phone number does not inflict an injury in fact); *Carolus v. Nexstar Media Inc*., No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025), at *1 (N.D. Cal. Apr. 9, 2025) (holding disclosure of IP address and general location of a device alone did not constitute an injury in fact). Here, Plaintiff's contention that Meta captured "c_user" information that permits Facebook to identify a user does not constitute an injury in fact.

Plaintiff's contention with respect to URLs fares no better. This Court has held that a transmission of a URL, without any further information, does not implicate Article III standing with respect to privacy. *Ramos v. Gap, Inc*., No. 23-CV-04715-HSG, 2025 WL 2144837, at *5 (N.D. Cal. July 29, 2025). Notwithstanding the foregoing, Plaintiff's allegation that the URL

revealed the name of the product requested is not enough to implicate Article III standing as it is not particularly sensitive information. *See, e.g., Timothee v. Meta Platforms, Inc.*, No. 25-CV-05106-LB, 2026 WL 1130363, at *5 (N.D. Cal. Apr. 27, 2026).

Just as the Plaintiff in the instant case, the plaintiffs in *Timothee* alleged disclosure of financial condition constituted injury in fact. 2026 WL 1130363, at *5. They asserted that (1) disclosure of the plaintiffs' using the Food Bank websites (by interacting with the Find Food map and entering their addresses) communicated their "intent to receive nutrition assistance," which revealed their "sensitive financial condition." *Id.* However, these allegations of interception of financial information did not confer standing. Rather, the Court held that "disclosing that someone accessed food-resource information on a public website is not similar to revealing that someone applied for welfare and does not establish an injury-in-fact."

Similarly, the URL information alleged to be communication does not reveal an *application* for financial assistance. The below URL information states the product but not any indication that product was applied for, and therefore does not implicate Article III privacy concerns:


```
"url":"https://www.jgwentworth.com/step2?inquiry_product=1&amount=10000-25000",
```


(FAC ¶¶ 53, 56)

Nor can Plaintiff manufacture standing with his Plaintiff's assertion that the financial information allegedly collected is governed under both the GLBA and the CalFIPA. As *Popa* emphasized, just because the legislature identifies an intangible harm by statute "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement." *Popa*, 153 F.4th at 789 (citations omitted).

**B. <u>Plaintiff Lacks Standing to Seek Injunctive Relief</u>.**

Plaintiff does not allege a threat sufficient to justify injunctive relief and this claim should be dismissed. To have standing to seek prospective injunctive relief, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted). In a

class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers–Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). *See, e.g., Racies v. Quincy Bioscience, LLC*, No. 15-CV-00292-HSG, 2015 WL 2398268, at *5 (N.D. Cal. May 19, 2015) (dismissing injunctive relief claim under Section 631(a)).

Plaintiff has alleged no facts establishing that he will suffer a threat of harm in the future. His claim for injunctive relief must be dismissed.

### C. <u>Plaintiff's Claims Will Fail Because He Consented to the Capture of His Information</u>.

Plaintiff consented to collection and disclosure of his information to third parties and therefore his FAC must fail. Plaintiff alleges violations of the ECPA, violation of CIPA Sections 631 and 632, intrusion upon seclusion, breach of confidence and negligence. Consent is a defense to all of these claims. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("The consent of one party is a complete defense to a Wiretap Act claim."); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (user consent is a defense under CIPA); *Smith v. Facebook, Inc.,* 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), aff'd, 745 F. App'x 8 (9th Cir. 2018) (user consent is a defense under privacy protections under the California Constitution as well as common-law tort claims for intrusion upon seclusion); *Friedman v. Pacific Outdoor Advertising Co*., 74 Cal. App. 2d 946 (1946) (consent as a defense to negligence claim).

Consent would also dispose of Plaintiff's breach of confidence claim. Such a claim requires that the plaintiff conveyed confidential and novel information; (2) the defendant knew that the information was being disclosed in confidence; (3) there was an understanding between the plaintiff and the defendant that the confidence be maintained; and (4) there was disclosure or use in violation of the understanding. *Aliotti v. R. Dakin & Co*., 831 F.2d 898, 903 (9th Cir. 1987). If there is consent, there was no use in violation of the understanding.

Consent can be established via disclosure of policies that address the communication of sensitive information. *Timothee*, 2026 WL 1130363, at *6. A privacy policy must "explicitly

notify" users of the practice at issue to establish consent. *Id.* at *7 (citing *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1078 (N.D. Cal. 2023).)

His FAC also provides the following screenshot that includes a button for "Get Started".




**(Figure 1)**

(FAC ¶ 26)

Here, Plaintiff alleges that he provided financial information in conjunction with an application for a debt consolidation loan. (FAC ¶ 62)




**(Figure 2)**

Plaintiff's FAC omits the final step before pressing "submit":




(Ex. 13)

That step requires that Plaintiff "consent and agree to JGW's Esign Consent, Privacy Policy and Terms of Use" whereby the Privacy Policy is hyperlinked.

Critically, the screenshot informs the user that he/she will be consenting to JGW's Privacy Policy. Specifically, first the Privacy Policy informs the user that the types of information collected include financial information. (Ex. 15) Next, JGW informs the user who would receive that financial information that third parties will receive that information:

> When you visit or browse our website, we and our advertising, marketing, or service partners may collect information such as your IP address, the URL of the web pages you visit, and may use tracking technologies to collect statistical and other information about your use of our website and other websites (collectively, "Tracking Technologies").

(Ex. 15)

Plaintiff's conclusory assertion that he did not consent is insufficient to rebut these judicially noticeable facts. Plaintiff's reference to the specific consent requirements of GLBA are irrelevant, as they would circumvent the fact there is no private right of action under those statutes. *See, e.g., Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010) (dismissing claim requiring compliance with RESPA disclosure requirements as there was no private right of action).

As set forth in Section IV.D.3, *infra*, there are no specific allegations that any collection occurred in real time prior to the "submit" screen. In fact, Plaintiff's allegations with respect to

Segment are to the contrary:

> **Once the consumer submits the above information to J.G. Wentworth**, the Segment Tracker surreptitiously and without the consumers' knowledge or consent collects the form entries. Segment collects, in real time, sensitive information from their application.

(FAC ¶ 52) (emphasis added).

Therefore, any argument that JGW did not obtain prior express consent prior to interception as required by *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) is misplaced.

Moreover, to the extent Plaintiff contends that Meta captured his information, he states that it would include a unique c_user id. According to Plaintiff, the unique "c_user" id which corresponds with the consumer's Facebook profile. (FAC ¶ 48) Therefore, only if Plaintiff was Facebook user, would he be able to be identified by Meta.[2] However, all Facebook users are required to "agree" to the Terms of Service (and incorporated policies) "to create a Facebook [or Instagram] account." *Lloyd v. Facebook, Inc*., 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023), aff'd in relevant part, 2024 WL 3325389 (9th Cir. Jul. 8, 2024); see also *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21, 2023) ("All Facebook users must agree to its Terms of Service[.]").

Those contracts clearly disclose the practices at issue in the FAC. The Terms of Service explain that Meta "use[s] your personal data to help determine which personalized ads to show you." (Ex. 2 at 1.) The Privacy Policy further explains that Meta "receive[s] information" from third-party websites, including through code from the Meta Pixel, "about a variety of your information and activities on and off [Meta's] Products." (Ex. 4 at 5.) That information includes "device information" and "[h]ow you use [third parties'] products and services," and the Privacy Policy discloses that Meta may "match" that activity "with your [Meta] account." (Id.) The Cookies Policy reiterates that businesses may use the "Meta Pixel" to share information about

[2] If Plaintiff was *not* a Facebook user, then all that would be captured is a URL and the amount requested, and nothing else. This does not trigger any privacy concerns.

"your interactions with them"; that Meta "receive[s] identifiers" through cookies when users visit websites that "incorporate Meta technologies" like Pixel code; and that Meta uses those cookies to "deliver ads to people who have previously visited a business's website." (Ex. 9 at 1, 5, 10.)

The Ninth Circuit has already twice concluded that "Facebook's data policy gives clear notice that third party partners may share data with Facebook." *Lloyd*, 2024 WL 3325389, at *2; see also *Smith*, 745 F. App'x at 8-9. In *Smith*, the Ninth Circuit recognized that Meta's policies disclose the precise conduct at issue here: a "reasonable person viewing [Facebook's] disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third party sites and (b) later using the data for advertising purposes." 745 F. App'x at 8-9. The court thus held that the plaintiffs there had consented to "collect[ion] and us[e] [of] their browsing data from various healthcare-related websites" and affirmed dismissal of CIPA and privacy claims. Id. Similarly, in *Lloyd*, the Ninth Circuit affirmed dismissal of a privacy claim where the plaintiff had alleged that Meta "impermissibly track[ed] her online activity," "because Facebook's data policy gives clear notice" that such data will be shared from third parties. 2024 WL 3325389, at *2. *See also Timothee*, 2026 WL 1130363, at *8 ("Having consented to Meta's receiving their information, the plaintiffs' claims against Meta are dismissed.")

Either Plaintiff is a Facebook user that can be identified by Meta with a c_user id and therefore consented to collection of information, or a URL and amount requested was captured by Meta with no identifying information. Plaintiff's claims relating to Meta must be dismissed.

**D. <u>Plaintiff Failed to State a Claim for Violation of CIPA Section 631 (Count I)</u>.**

CIPA Section 631(a) contains four distinct clauses. California Penal Code § 631(a) prohibits

> 1) "by means of any machine, instrument, or contrivance, or in any other manner, intentionally tap[ping] or mak[ing] any unauthorized connection ... with any telegraph or telephone wire, line, cable, or instrument"
>
> 2) "willfully and without consent of all parties to the communication, or in any unauthorized manner, read[ing], or attempt[ing] to read, or to learn the content or meaning of a message, report, or communication while the same is in transit"

> 3) "us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained" and
>
> 4) "**aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do**, or permit, or cause to be done any of the acts or things mentioned above."

Cal. Penal Code § 631(a) (emphasis added).

Plaintiff's FAC fails to state any claim under this statute, as set forth below.

**1. <u>JGW is not directly liable because it is a party to the communication</u>.**

There is no liability for JGW directly as this Court has held Section 631 does not apply to a party to the communication. *Ramos*, 2025 WL 2144837, at *3. Notwithstanding the foregoing, Plaintiff's FAC only attempts to allege a claim under Count I, Clause Four for aiding and abetting. However, if there is no underlying violation of Clauses One through Three, it follows there is no violation of Clause Four for aiding and abetting a direct violation.

**2. <u>The first clause of CIPA Section 631(a) does not apply to communications over the internet</u>.**

Any claim under Clause One of Section 631(a) fails because that provision does not apply to communications over the internet. *Ramos, supra*.

**3. <u>Plaintiff's allegations of real-time interception are conclusory</u>.**

Plaintiff's allegations of real time interception are too conclusory to support any underlying claim under Clauses One through Three of Section 631(a). *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1084 (C.D. Cal. 2023); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). The court in *Licea* found that the plaintiff's allegation was "bare" and "conclusory." *Id.* In the latter case, the court found that the "[p]laintiffs' conclusory statement that communications are intercepted is not enough to make out a § 631 claim." *Rodriguez*, 2022 WL 214552, at *2. The plaintiff's repeated use of the word "intercept" without the addition of specific facts to define the interception were insufficient to plead that the defendant, Google, was intercepting the relevant data in transit. *Id.*

Here, Plaintiff's allegations only provide conclusory allegations that interception in real

time. (FAC ¶¶ 29-34, 47, 52 & Fig. 3, 4, 55 & Fig. 5) The screenshots of code he provides to support his claim of contemporaneous interception (Figs. 3-5) are specious support. These screenshots lack timestamps. Without timestamps within the code, they are at best indicative of the application data at issue. They do not demonstrate contemporaneous interception in real time. See, e.g., *Sanchez v. Cnty. of Los Angeles*, No. CV177218DMGJEMX, 2019 WL 4180014, at *3 (C.D. Cal. Apr. 24, 2019) ("When these video files are played, however, no time-stamps appear on the images depicted therein. To the extent that Dinh intends to refer to the "date modified" metadata for each video file, the reliability of that information is questionable because it differs from times identified in McDonald's declaration.")

As Plaintiff's excerpted code is irrelevant to whether information was captured in real-time, Plaintiff has only made conclusory statements of contemporaneous collection. His Section 631 claim should be dismissed.

**4. <u>Plaintiff fails to allege communication was read while in transit</u>.**

Plaintiff has not plausibly alleged a different Clause Two requirement: That Meta or Segment has "read, or attempt[ed] to read, or to learn the contents or meaning of" the communication while the communication is in transit to JGW. Plaintiff "must do something more than just intercept the communication while it is in transit to be held liable." *Doe v. Eating Recovery Ctr. LLC,* 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025) (dismissing Section 631(a) claim); See *Williams v. DDR Media, LLC*, No. 22-CV-03789-SI, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) (same).

Plaintiff's allegations do not support a plausible interference Meta or Segment attempted to read or learn the contents of the communication between Plaintiff and JGW while in transit. *See Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012) ("[C]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss."). Accordingly, Plaintiff's allegations are insufficient to demonstrate Meta or Segment is liable under Section 631(a), clause two. Plaintiff's Section 631(a) claim should be dismissed in its entirety.

**5. <u>Plaintiff has failed to allege he engaged in interactions with Defendant's emails and website that generated protected "content" with respect to Meta</u>.**

Plaintiff's FAC fails to state a 631(a) claim as to Meta because the communications between him and Meta that he describes as captured generally did not involve content. Clauses two and three of § 631(a) prohibit the unauthorized access to and use of the "contents" of any communications, and clause four prohibits aiding and abetting such conduct. Cal. Penal Code § 631(a). The definition of "contents" under CIPA is the same as under the ECPA. *See, e.g., In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). The Ninth Circuit has held that under the ECPA " 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig*., 750 F.3d 1098, 1106 (9th Cir. 2014). In other words, courts must consider whether the intercepted information is "information about a user's communication, or "the communication itself." *Id. at* 1107 (emphasis added). Only the latter is protected under CIPA.

With respect to the "c user" ID, allegedly captured by Meta, that does not constitute "contents" under the statute. With respect to the collected URL that states the product or service that the consumer is requesting, to the extent that constitutes "contents", it does not implicate an Article III privacy interest for the reasons previously discussed.

**E. <u>Plaintiff's ECPA Claim Fails For The Same Reasons as His CIPA Claim</u>.**

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *NovelPoster v. Javitch Canfield Grp.,* 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014). Because Plaintiff's CIPA claim fails, so must his ECPA claim. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023).

**C. <u>Plaintiff's 632 Claim Will Fail</u>.**

Plaintiff's claim under Section 632 fails because the limited information alleged to be captured by JGW does not rebut the presumption that internet communications are not confidential for the purposes of Section 632. "A communication is confidential under Section 632

if a party 'has an objectively reasonable expectation that the conversation is not being overheard or recorded.' " *Swarts*, 689 F. Supp. 3d at 746. Because online "communications can easily be shared by, for instance, the recipient(s) of the communications," "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632." Id. at 746–47 (quoting *Campbell v. Facebook Inc.,* 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014)) (collecting cases). There is generally a " 'presumption' that such communications do not give rise to the requisite expectation." *Id.* at 747 (quoting *Revitch v. New Moosejaw, Inc*., LLC, No. 18-CV-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019)).

For the same reasons Plaintiff's allegations do not implicate Article III privacy concerns, they do not establish a Section 632 claim.

**D. Plaintiff's Intrusion Upon Seclusion Claim Fails.**

Plaintiff's FAC does not sufficiently plead an intrusion upon seclusion claim as his consent establishes that JGW's conduct was not "highly offensive." To establish intrusion upon seclusion, a plaintiff must show "an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." *Popa*, 153 F.4th at 791 (emphasis in original) (quoting *Nayab v. Cap. One Bank (USA), N.A*., 942 F.3d 480, 491 (9th Cir. 2019)). Plaintiff, however, "identifies no embarrassing, invasive, or otherwise private information collected by [JGW]." *Popa*, 153 F.4th at 791. Instead, regardless of whether Plaintiff provided consent before or after interception, any consent is indicia that he did not consider the information "highly offensive to a reasonable man." Therefore, this claim fails.

**E. Plaintiff's Negligence Claim Will Fail.**

Plaintiff's negligence claim fails because he does not sufficiently allege causation or actionable damages as required establish negligence. To state a negligence claim under California law, a plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 924 (N.D. Cal. 2011) (citation omitted).

Plaintiff identifies the following duties as support for his negligence cause of action:

> Defendant owed to Plaintiff and Class Members a duty to exercise reasonable care in handling and using Plaintiff's and the Class Members' personal financial information in its care and custody, including implementing procedures sufficient to reasonably protect the information from the disclosure. These duties to safeguard Plaintiff and the Class Members' nonpublic personal information arise from under the GLBA, which establishes "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

(FAC ¶ 117)

Plaintiff claims the following damages:

> As a direct, proximate, and traceable result of Defendant's installation of these technologies, Plaintiff and the Class Members have suffered or imminently will suffer injury and damages. Namely, Plaintiffs suffer monetary damages in the form of lost value of their personal financial information and diminution in value, as well as emotional damages and distress through the inappropriate and intrusive targeted advertisements they receive. Plaintiffs also face increased risk of future harm, embarrassment, humiliation, frustration, and stigma stemming from the disclosure of the fact that they were a J.G. Wentworth customer to fourth party advertisers, and others.

(FAC ¶ 118)

Plaintiff does not assert any theory "for how (or to what degree) the value of that information decreases" as the result of tracking and therefore this claim for economic injury fails. *Carolus,* 2025 WL 1338193, at *1. Similarly, claims of diminution of value of personal information are routinely rejected either on the ground that such information has no compensable value (*Corona v. Sony Pictures Ent., Inc.,* No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015), at *4), or on the ground that any loss is purely economic, and thus recovery is barred by the economic loss doctrine, *See Hameed-Bolden v. Forever 21 Retail*, Inc., 2018 WL 6802818, at *5 (C.D. Cal. 2018). Moreover, the alleged release of information to fourth party advertisers could have occurred after Plaintiff consented to release of his information, and therefore Plaintiff cannot establish causation of emotional distress of advertiser-related damages.

Moreover, conclusory claims of emotional distress from advertisement calls does not support a negligence claim. See *R.C. v. Walgreen Co*.,733 F.Supp.3d 876, 898 (C.D. Cal. 2024).

Therefore, Plaintiff's negligence claim should be dismissed.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss the First Amended Complaint.

Dated: August 7, 2026

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Stephen A. Watkins*

Stephen Watkins

Attorneys for Defendant