Yaman Salahi (SBN 288752)
yaman@salahilaw.com
Nicole Cabañez (SBN 365099)
nicolec@salahilaw.com
Taylor Applegate (SBN 357742)
taylora@salahilaw.com
**SALAHI PC**
505 Montgomery Street, 11th Floor
San Francisco, California 94111
Tel: (415) 236-2305

Albert J. Plawinski (admitted pro hac vice)
albert@plawinski.law
**PLAWINSKI, PLLC**
2101 Pearl Street
Boulder, Colorado 80302
Tel: (303) 720-7095
*Counsel for Plaintiff and the proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| RAMADAN ROUBY, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>J.G. WENTWORTH COMPANY, a Delaware corporation,<br><br>*Defendant*. | Case No.: 4:26-cv-3082-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Date: October 15, 2026<br>Time: 2:00 p.m.<br>Dept.: Courtroom 2 – 4th Floor |

# TABLE OF CONTENTS


**TABLE OF CONTENTS ........ II**

**TABLE OF AUTHORITIES ........ III**

**I. INTRODUCTION ........ 1**

**II. FACTUAL OVERVIEW ........ 2**

**III. LEGAL STANDARD ........ 3**

**IV. ARGUMENT ........ 3**

A. Plaintiff Adequately Pleads Article III Standing ........ 3

B. Plaintiff Has Standing to Pursue Injunctive Relief ........ 7

C. Defendant Cannot Establish Plaintiff's Consent at This Stage ........ 8

D. Plaintiff's Claims Under CIPA Section 631 Are Adequately Pled. ........ 13

E. Plaintiff's ECPA Claims Are Not Reliant on Plaintiff's CIPA Claims ........ 16

F. Plaintiff's Claims Under CIPA Section 632 Should Survive. ........ 17

G. The Interception Alleged Here Constitutes a Highly Offensive Intrusion ........ 17

H. Plaintiff Has Adequately Alleged A Claim for Negligence ........ 18

**V. CONCLUSION ........ 19**

# TABLE OF AUTHORITIES

## CASES

*Adair v. Aylo USA Inc.*, No. 2:25-cv-06351-WLH-KS, 2026 WL 1455464 (C.D. Cal. May 19, 2026) .......... 15

*Allison v. PHH Mortg.*, No. 25-cv-05323-RFL, 2026 WL 1353827 (N.D. Cal. May 14, 2026) .......... 7

*Architectureart, LLC v. City of San Diego*, No. 15-cv-1592-BAS-NLS, 2016 WL 1077124 (S.D. Cal. Mar. 18, 2016) .......... 16

*Baton v. Ledger SAS*, 740 F. Supp. 3d 847 (N.D. Cal. 2024) .......... 19

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... 10, 11

*Briskin v. Shopify Inc.*, No. 21-cv-06269-PJH, 2026 WL 2200418 (N.D. Cal. July 30, 2026) .......... 15

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 18

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024) .......... 8, 9, 11

*Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 17

*Carolus v. Nexstar Media Inc.*, No. 24-cv-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 6

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025) .......... 11

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) .......... 8

*Correia v. Lulu & Georgia, Inc.*, No. 3:26-cv-01186-GPC-JLB, 2026 WL 2343093 (S.D. Cal. Aug. 12, 2026) .......... 14, 17

*D'Angelo v. FCA U.S., LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 7

*D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) .......... 14

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) .......... 7

*Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 4

*Doe I v. Google LLC*, No. 23-cv-02431-VC, 2025 WL 1616720 (N.D. Cal. June 6, 2025) .......... 9

*Doe v. Adventist Health Sys./West*, 2026 WL 2474859 (Cal. App. July 24, 2026) .......... 13

*Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 15, 16

*Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 9, 12

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025)........................................................................ 14, 15

*Esparza v. UAG Escondido A1 Inc.*,
No. 23-cv-0102-DMS, 2024 WL 559241 (S.D. Cal. Feb. 12, 2024)........................................ 14

*Garcia v. Truist Fin. Corp.*,
825 F. Supp. 3d 1149 (C.D. Cal. 2026) ...................................................................... 5, 18

*Gianne v. Accor Mgmt. US Inc.*,
No. 25-cv-2425-DMG (Ex), 2026 WL 925522 (C.D. Cal. Mar. 31, 2026)................................ 9

*Godun v. JustAnswer LLC*,
135 F.4th 699 (9th Cir. 2025) ................................................................................ 10, 11

*Goldstein v. Rumble Inc.*,
No. 25-cv-06304-MWF (SKX), 2026 WL 1406766 (C.D. Cal. Apr. 24, 2026)............ 14, 15, 16

*Gray v. Luxottica of Am., Inc.*,
No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566 (C.D. Cal. Dec. 16, 2024) ...................... 16

*Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026) 4

*Heiting v. FKA Distrib. Co.*, No. 2:24-cv-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ........................................................................................................................ 9

*Hodgers-Durgin v. de la Vina*,
199 F.3d 1037 (9th Cir. 1999)....................................................................................... 8

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ........................................................................... 6

*In re Facebook Privacy Litig.*,
572 F. App'x 494 (9th Cir. 2014) ................................................................................. 19

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) ................................................. 10

*Jimenez v. OE Fed. Credit Union*,
No. 24-cv-02746-JST, 2025 WL 2402137 (N.D. Cal. Aug. 19, 2025).................................... 19

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)................................................................................... 11, 12

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)........................................................................................ 14

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ............................................................................. 4

*Licea v. Am. Eagle Outfitters*, Inc.,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......................................................................... 15

*Lingad v. Indymac Fed. Bank*,
682 F. Supp. 2d 1142 (E.D. Cal. 2010)........................................................................... 12

*Lloyd v. Facebook, Inc.*,
No. 21-cv-10075-EMC, 2023 WL 1802415 (N.D. Cal. Feb. 7, 2023) ..................................... 12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)...................................................................................................... 4

*Lynch v. Express Scripts Holding Co.*,
No. 23-cv-01170-AMO, 2025 WL 2224419 (N.D. Cal. Aug. 5, 2025)...................................... 9

*M.G. v. Therapymatch, Inc.*,

No. 23-cv-04422-AMO, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......................... 14, 15

*M.R. v. Salem Health Hosps. & Clinics*,
No. 6:23-cv-01691-AA, 2024 WL 3970796 (D. Or. Aug. 28, 2024) ....................................... 19

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008)........................................................................................... 3

*Mata v. Zillow Grp., Inc.*,
No. 24-cv-01095-DMS-VET, 2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .................... 13, 14

*Matera v. Google, Inc.*,
No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)................................. 7

*Meta Platforms, Inc. v. Nguyen*,
No. 21-cv-05002-TSH, 2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) .................................. 12

*MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) .................................................................................. 4

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................................................................................... 4, 6, 18

*Racies v. Quincy Bioscience, LLC*,
No. 15-cv-00292-HSG, 2015 WL 2398268 (N.D. Cal. May 19, 2015) ..................................... 8

*Ramos v. Gap, Inc.*,
No. 23-cv-04715-HSG, 2025 WL 2144837 (N.D. Cal. July 29, 2025) ............................... 6, 13

*Revitch v. New Moosejaw, Inc., LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ...................................... 17

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024)................................................................................. 13

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022)......................................... 15

*S. California Gas Leak Cases*,
7 Cal. 5th 391 (2019) ........................................................................................................... 19

*Sanchez v. Cnty. of Los Angeles*,
No. 17-cv-7218-DMG (JEMx), 2019 WL 4180014 (C.D. Cal. Apr. 24, 2019) ....................... 15

*Semien v. PubMatic Inc.*,
No. 25-cv-03164-SI, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026)............................................ 4

*Smith* v. *Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........................................................................................ 9, 12

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .................................................................................. 9

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ................................................................................ 17

*Terenkian v. Republic of Iraq*,
694 F.3d 1122 (9th Cir. 2012)........................................................................................... 3

*Timothee v. Meta Platforms, Inc.*,
No. 25-cv-05106-LB, 2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) ........................................ 6

*Tsao v. Desert Palace, Inc.*,
698 F.3d 1128 (9th Cir. 2012)........................................................................................... 9

*Valenzuela v. Nationwide Mut. Ins. Co.*,

686 F. Supp. 3d 969 (C.D. Cal. 2023) ..... 15

*Wells Fargo Bank, N.A. v. Renz*,
795 F. Supp. 2d 898 (N.D. Cal. 2011) ..... 19

*Williams v. DDR Media, LLC*,
No. 22-cv-03789-SI, 2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) ..... 15

**STATUTES**

15 U.S.C. § 6801(a) ..... 18

15 U.S.C. § 6802(b) ..... 7

18 U.S.C. § 2510(4) ..... 16

18 U.S.C. § 2511(d) ..... 7

Cal. Fin. Code § 4051.5(b)(2) ..... 7

Cal. Pen. Code § 631(a) ..... 7, 8, 13, 16

**REGULATIONS**

16 C.F.R. § 313.3(o)(2)(i)(A)-(F) ..... 7

## I. INTRODUCTION

Defendant J.G. Wentworth is a financial services company that markets a suite of products to individuals that are struggling financially and often have limited access to traditional loan financing. Customers applying for any J.G. Wentworth product frequently do so out of desperation. Unbeknownst to those consumers, J.G. Wentworth installed online trackers onto its application forms for the company's various financial products, allowing those trackers to obtain highly sensitive information about those consumers' financial situation, including their income, and the amount of money they are attempting to borrow. J.G. Wentworth never sought the level of informed consent that federal and state law require for disclosure of such financial information, and in the process opened the floodgates to a barrage of targeted advertisements for similar, often predatory, financial products and services. In doing so, J.G. Wentworth violates the Electronic Communications Privacy Act ("ECPA"), the California Information Privacy Act ("CIPA"), and commits several torts, including intrusion upon seclusion, negligence, and breach of confidence.

Defendant J.G. Wentworth advances numerous arguments for dismissal, yet all are without merit. ***First***, Defendant argues that Plaintiff failed to allege a concrete injury for the purpose of establishing Article III standing, incorrectly claiming that Plaintiff alleges only potential disclosure of his financial information rather than actual disclosure. This argument ignores Plaintiff's allegations about the specific financial product he applied for, and the personal information he personally submitted in his application—financial information that he alleges was shared with the tracking technologies without his consent and forms the basis for his claims. These allegations of actual disclosure of private information are more than sufficient to allege a concrete injury. ***Second***, Defendant looks beyond the pleadings to argue that Plaintiff consented to the disclosure of his financial information to third parties. This argument is premature at the pleading stage and wrong on the merits. Defendant's purported sign-up process is insufficient to bind consumers to any of Defendant's terms of use or privacy policies. ***Third***, Defendant argues that Plaintiff failed to allege in-transit interception, and that his applications for financial services do not constitute "content" protected from interception. These scatter-shot arguments ignore the weight of authority addressing these issues and flatly ignore relevant allegations in the complaint.

***Finally***, Defendant recycles its prior Article III standing arguments, arguing that the information intercepted was not confidential for the purpose of alleging a claim under CIPA Section 632, that the intrusion Plaintiff experienced was not "highly offensive," and that Plaintiff's damages cannot support a claim in negligence. Those arguments should be rejected for the same reason: financial information is protected by numerous statutes and is of a sensitive and private nature. Defendant's motion should be denied in its entirety.

## II. FACTUAL OVERVIEW

J.G. Wentworth is a financial services company. Its flagship product is the structured settlement, a product that offers cash up-front for future payment streams that typically provide for incremental payments, like settlements from personal injury lawsuits and annuities. ECF No. 12 ¶ 1 (Hereinafter "FAC"). In recent years, J.G. Wentworth has expanded its products to include personal loans, home equity loans, debt consolidation loans, and debt resolution services. *Id.* Debt consolidation loans are loans designed to pay off other loans. *Id.* ¶ 2. Consumers applying for a debt consolidation loan are generally struggling to pay high unsecured debt balances with high interest, such as credit cards; a consolidation loan can help pay debt with lower monthly payments. *Id*.

J.G. Wentworth's online application for these financial products proceeds in stages. A consumer is first prompted to select the product they wish to apply for and enter a specific loan amount before clicking a button to continue to the rest of the application. FAC ¶¶ 50-57. Then, they are prompted to enter additional information, including their full name, income, date of birth, email address, home address, and for home equity lines of credit, an estimated home value. *Id*. A consumer must click through several prompts before their application is ultimately submitted for consideration.

Unbeknownst to consumers filling out these applications, various tracking technologies, including Twilio's Segment Tracker and Meta's Pixel, surreptitiously and instantaneously collect and analyze the information that consumers submit through these application fields. FAC ¶¶ 26-34, 41-55. These technologies analyze the content of these field entries, and track and analyze consumer behavior across Defendant's website, for both the trackers' and Defendant's benefit.

FAC ¶¶ 45-49. Specifically, Twilio reserves the right to use consumer data to train its existing models, Meta uses consumer data to find new customers for its advertising clients, and J.G. Wentworth uses it to run targeted advertisement campaigns. *Id.*

Plaintiff applied for a consolidation loan on Defendant's website within the limitations period and entered information relating to his income, the amount of money he needed for the debt consolidation, his employment status, his address, and his contact information. FAC ¶ 62. His information was collected and analyzed by the two tracking technologies, Twilio's Segment and Meta's Pixel, and he has received a sudden influx of targeting advertising for similar products since. *Id.* ¶ 64. Plaintiff and the proposed class members never consented to J.G. Wentworth sharing their financial information with these tracking technologies, or to the advertisers that ultimately received their information. *Id.* ¶ 63.

## III. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The same standard applies for challenges to the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

## IV. ARGUMENT

### A. Plaintiff Adequately Pleads Article III Standing

Plaintiff alleges facts sufficient to demonstrate that he applied for a consolidation loan on Defendant's website, that the application required him to submit sensitive financial information to J.G. Wentworth, and that he has since experienced an increase in targeted advertising for similar products, supporting his allegation that his information was shared with third parties. FAC ¶¶ 62, 64. These allegations are more than sufficient to meet Article III standing at this stage.

There are three elements to Article III standing: (1) the plaintiff must have suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations omitted). The only element in dispute is the first, whether Plaintiff alleged facts sufficient to plead a concrete and particularized injury.

In considering whether a Plaintiff suffered such an injury, courts must "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). In actions brought under privacy statutes, courts generally analogize to common-law privacy torts, such as intrusion upon seclusion and public disclosure of private facts. *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) (disclosure of activity on fitness platform through cookies analogized to common law tort of public disclosure of private facts). However, courts do not require that a statutory violation be an "exact duplicate" of its common law predicate to confer standing, and indeed, "many courts require a match only in the kind of harm and not the degree." *Popa*, 153 F.4th at 791. Thus, courts in this District generally find that claims challenging the use of tracking technologies to intercept private information satisfies Article III's injury requirement when a plaintiff alleges "the loss of the ability to control information about himself and to avoid the broad dissemination of that information." *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 247875, at *2 (N.D. Cal. Jan. 29, 2026) (collecting cases); *Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 WL 1138358, at *3 (N.D. Cal. Apr. 21, 2026) (allegations that the defendant collected and disseminated detailed video viewing information to package individuals into audiences sufficient to allege concrete injury under Article III); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863-64 (N.D. Cal. 2026) (data broker collection of information across platforms met Article III injury requirements); *Semien v. PubMatic Inc.*, No. 25-cv-03164-SI, 2026 WL 216333, at *5 (N.D. Cal. Jan. 27, 2026) (same).

Plaintiff alleges that information relating to the financial services one purchases, and the information underlying those applications, are private, and Federal and State law impose strict requirements for the disclosure of that information. FAC ¶¶ 15-25. He alleges that he applied for a debt consolidation loan on Defendant's website, and that in the course of applying for that loan he entered information relating to how much money he needed, his employment status, his

income, whether he rents or owns his home, his name, his address, his date of birth, and his contact information. FAC ¶ 62. He also alleges that J.G. Wentworth provides financial services, including debt consolidation loans and debt relief services, to individuals with high levels of unsecured debt that are struggling financially. *Id.* ¶¶ 1-3. The complaint explains that the financial products a consumer applies for, and indeed, the financial product *he* applied for, reveals information about a consumer's financial situation. For example, a debt consolidation loan refers to a single loan that can be used to pay off various debt balances, thus, requesting a consolidation loan for a specific amount indicates the consumer's overall debt burden. *Id.* ¶ 2. He also indicated that since submitting his application, he began receiving targeted advertisements related to debt resolution and settlement programs, leading him to believe that Defendant had disseminated the information from his application to third parties. *Id.* ¶ 64. Finally, Plaintiff's complaint includes detailed allegations about the type of information that Defendant's website collects and shares with the tracking technologies, the way that each tracking technology collects and disseminates that information to third party advertisers and integrations, *id.* ¶¶ 36-49, and that these tracking technologies cannot be deleted from the consumer's device. *Id.* ¶¶ 29-30. All told, the complaint contains sufficient information to infer that the information submitted with Plaintiff's application for a consolidation loan was highly sensitive, that the information he submitted was disseminated to third parties, and that Defendant's actions deprived him of the ability to avoid the broad dissemination of that information. *Garcia v. Truist Fin. Corp.*, 825 F. Supp. 3d 1149, 1161 (C.D. Cal. 2026) (bank's disclosure of information relating to citizenship, housing status, and employment via tracking technologies sufficient to allege Article III injury).

Defendant's arguments to the contrary each fail. First, Defendant's assertion that Plaintiff's complaint "includes no information about what specific information was captured from him during this [website] interaction" is incorrect. ECF No. 18 at 8 (Hereinafter "Mot."). Plaintiff specified the financial product he applied for, the information he entered into Defendant's application, and facts that lead him to believe Defendant disseminated his information to third-party advertisers. FAC ¶¶ 62-64. Plaintiff does not allege that Defendant *only* disclosed Plaintiff's "c_user" information; he alleges that Defendant disclosed that

information along with information that he submitted in response to a form on Defendant's website that conveyed his interest in, need, and eventual application for a debt consolidation loan, including the amount of the desired loan and his income. *Id.* ¶ 62. Defendant's cited authorities are inapposite in that the information alleged to have been shared was either not shared with third parties at all, or related to information that, on its own, was not of a sensitive nature. *Popa*, 153 F.4th at 791 (session-replay technology for consumer visits to a pet supplies website were not sensitive and did not involve sharing the data with third parties); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (noting that the information disclosed related to online gaming, and in context, the information revealed was not sensitive); *Carolus v. Nexstar Media Inc.*, No. 24-cv-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025), (distinguishing cases where plaintiffs alleged disclosure of several types of personal information, including website activity, from those where only IP address and general device location were disclosed); *Timothee v. Meta Platforms, Inc.*, No. 25-cv-05106-LB, 2026 WL 1130363, at *5 (N.D. Cal. Apr. 27, 2026) (data shared only involved website visit to food bank website, not form submissions indicating responses to an application or other protected information).[1]

Here, however, Plaintiff alleges that the information collectively shared with third parties was sufficient to infer details about Plaintiff's financial position, including his income and debt burden, not simply that he visited Defendant's website. What's more, Plaintiff includes detailed allegations in the complaint about the fact that the information revealed to the Tracking Technologies is subject to heightened notice and consent requirements under the Gramm-Leach-Bliley Act ("GLBA") and parallel state laws, including the California Financial Information Privacy Act ("CFIPA"). FAC ¶¶ 15-25. Specifically, regulations implementing the GLBA forbid sharing any information a consumer provides to a financial institution while applying for the institution's products and services, including the fact that the consumer is a customer with that financial institution. *See* 16 C.F.R. § 313.3(o)(2)(i)(A)-(F). Before disclosing such information,

---

[1] While Defendant cites to *Ramos v. Gap, Inc.*, No. 23-cv-04715-HSG, 2025 WL 2144837, at *5 (N.D. Cal. July 29, 2025), for the proposition that transmission of a URL does not confer Article III standing, the decision does not address standing whatsoever. All that the case holds is that the clicking of a URL is not the content of a communication. *Id.* at *4-5.

financial institutions must conspicuously disclose to the consumer that the institution will make that disclosure and offer the consumer a chance to opt out. 15 U.S.C. § 6802(b). Similarly, under CalFIPA, financial institutions that want to share information with third parties must seek affirmative consent from California consumers before sharing the information. Cal. Fin. Code § 4051.5(b)(2). The fact that this information is subject to heightened notice and consent requirements further supports the notion that the information is sensitive and carries with it a heightened expectation that the information would have been kept confidential. *Allison v. PHH Mortg.*, No. 25-cv-05323-RFL, 2026 WL 1353827, at *6 (N.D. Cal. May 14, 2026) (disclosure of the types of loans the plaintiff applied for constituted "sensitive financial information" that, if disclosed, could give rise to privacy injury traditionally recognized at common law).

**B. Plaintiff Has Standing to Pursue Injunctive Relief**

Plaintiff challenges Defendant's present and ongoing practice of collecting and disclosing sensitive financial information to various tracking technologies. When a plaintiff alleges that a defendant's practice of using and disclosing unlawfully intercepted data for its benefit is ongoing, courts in this Circuit have found that plaintiffs may pursue injunctive relief. *D'Angelo v. FCA U.S., LLC*, 726 F. Supp. 3d 1179, 1194 (S.D. Cal. 2024); *Matera v. Google, Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *19 (N.D. Cal. Sept. 23, 2016) (the plaintiff alleged a "real and immediate threat of repeated injury" from Google's ongoing analysis of unlawfully intercepted data). Plaintiff alleges that Defendant unlawfully caused his confidential financial information to be shared with the Tracking Technologies, that those technologies analyze that information in real-time, and that Defendant then uses the outputs from that analysis for its own benefit. FAC ¶¶ 45-49, 61. In using this data to run its own targeted advertising campaigns, Defendant continues to misuse Plaintiff's data, in violation of the ECPA and CIPA. *See* 18 U.S.C. § 2511(d); Cal. Pen. Code § 631(a). Plaintiff's harm is therefore ongoing. Further, unless Defendant corrects its failure to conspicuously disclose its information sharing practices and obtain informed consent, Plaintiff is unable to know if any future applications for Defendant's services will result in the same unlawful information disclosures. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018); FAC ¶ 77.

Defendant's cited authorities do not suggest that more is required of Plaintiff at this stage, and indeed, none discuss the availability of injunctive relief for claims under privacy statutes. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (disabled plaintiff could demonstrate standing under the Americans with Disabilities Act by alleging that they would be deterred from returning to non-compliant facility); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (plaintiff failed to establish unlawful Border Control stop would happen to them again); *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2015 WL 2398268, at *5 (N.D. Cal. May 19, 2015) (false advertising plaintiff could not establish they would be misled again).[2] However, the Complaint here is clear that Defendant continues to share consumers' financial information with third parties, and that those third parties use the information for their ongoing benefit. FAC ¶¶ 61, 77. Plaintiff has also alleged that he currently receives targeted advertising for debt settlement services, an intrusion that he continues to suffer because of Defendant's wrongdoing. *Id.* ¶ 64. Plaintiff has alleged a real threat of continued injury from the illicit disclosure and use of his private financial information by Defendant.

**C. Defendant Cannot Establish Plaintiff's Consent at This Stage**

Defendant next claims that Plaintiff consented to Defendant's interception and disclosure of his sensitive financial information, despite explicit allegations that he did no such thing. FAC ¶ 63. In making these arguments, Defendant relies almost exclusively on materials outside the complaint that have not been incorporated by reference, are not properly subject to judicial notice, and most importantly, do not tend to establish that he assented to the specific conduct alleged in his complaint.

Consent "can be [express] or implied, but any consent must be actual." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (internal citations and quotations omitted; modification in original). In determining consent, courts consider "whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be

[2] Defendant mistakenly cites *Racies* as dismissing an injunctive relief claim under Section 631(a), when that case does not address Cal. Penal Code §631(a) at all. *Compare* Mot. at 10, *with Racies*, 2015 WL 2398268, at *5.

carried out so that their acquiescence demonstrates knowing authorization." *Id.* (quoting *Smith* v. *Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018)). To establish consent based on disclosures in an online privacy policy, those disclosures must "explicitly notify" users of the specific conduct at issue. *Id.* "[C]onsent is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct' and if the alleged tortfeasor did not exceed the scope of that consent." *Id.* (quoting *Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1149 (9th Cir. 2012)). What's more, consent in this context is governed by general principles of contract formation, meaning an online privacy policy may nonetheless fail because the disclosure was not presented in a reasonably conspicuous manner, or the consumer's actions on the website did not clearly manifest their assent to the policy. *See Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 941-942 (N.D. Cal. 2024); *Gianne v. Accor Mgmt. US Inc.*, No. 25-cv-2425-DMG (Ex), 2026 WL 925522, at *4-5 (C.D. Cal. Mar. 31, 2026).

Because consent requires an analysis of the totality of the circumstances, courts rarely dismiss privacy claims based on consent, as the scope of any consent is often contextual and highly fact dependent. See *Doe I v. Google LLC*, No. 23-cv-02431-VC, 2025 WL 1616720, at *3 (N.D. Cal. June 6, 2025) ("consent is a factual issue that cannot be resolved on the pleadings"); *Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501-AMO, 2025 WL 2052302, at *9 (N.D. Cal. July 22, 2025); *Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2025 WL 2224419, at *9 (N.D. Cal. Aug. 5, 2025); *Heiting v. FKA Distrib. Co.*, No. 2:24-cv-07314-HDV-AGR, 2025 WL 736594, at *4 (C.D. Cal. Feb. 3, 2025).

Here, Plaintiff alleges that Defendant's website form requires consumers to submit information piecemeal, and the various tracking technologies collecting information as the consumer clicks through the various application prompts. FAC ¶¶ 50-57. The complaint is clear that information is intercepted at every stage of the application process, as they are submitted to the website. *Id.* A consumer is not presented with the Defendant's privacy policy until the last step, *after* the various tracking technologies have already intercepted and analyzed the previous form entries. Thus, even assuming Defendant could meet its burden to establish Plaintiff's awareness of and consent to its terms of use at this stage, the challenged disclosures of Plaintiff's

personal financial information happened *before* any proper consent was arguably obtained. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (interpreting CIPA to require consent be provided prior to the challenged interception, not afterwards). Defendant's argument to the contrary focuses on a single clause in the complaint reading, in relevant part, "Once the consumer submits the above information to J.G. Wentworth, J.G. Wentworth, the Segment Tracker surreptitiously and without the consumers' knowledge or consent collects the form entries." FAC ¶ 52. Defendant misinterprets this allegation to mean that no information is shared with third parties until *after* a consumer has completed the entire application flow. But that is not what the complaint alleges. *See*, *e.g.*, FAC ¶¶ 52 ("Segment collects, *in real time*, sensitive information from their application."); 55 ("The Segment Tracker . . . collects all form inputs *in real time*" (emphasis added)). Indeed, Defendant's application form requires consumers to submit information by clicking through a multi-step series of distinct screens, each of which collects sensitive financial information, which is shared with the third parties well before any person gets to the final "submit" screen. To the extent there is any ambiguity in the allegations, they must be construed in Plaintiff's favor at this stage.

Nevertheless, Defendant fails to bind users to its privacy policy as a matter of contract law. To bind Plaintiff to the privacy policy, Defendant's website must have 1) provided reasonably conspicuous notice of the policy, and 2) Plaintiff must have unambiguously assented to the policy. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). To satisfy the first requirement, the policy must have been presented "in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* Here, the policy is not presented until the end of a multi-step application process and is buried in a disclosure that is several paragraphs long, requiring consumers to scroll in order to see any mention of Defendant's privacy policy. *Godun v. JustAnswer LLC*, 135 F.4th 699, 713 (9th Cir. 2025) (placing a notice "outside the main frame of the screen" created an "impression of visual discontinuity" and failed to provide inquiry notice); *Berman*, 30 F.4th at 857 (Webpages are required to "take steps to capture the user's attention and secure her assent") (quotations omitted). There is no factual basis to support an inference that Plaintiff or any other person actually scrolled

or would have scrolled, since it is possible to proceed to the form submission without doing so.

Further, consumers are not provided any notice that the act of submitting an application would be construed as assent to Defendant's privacy policy, failing the second prong of the *Berman* test. *Berman*, 30 F.4th at 858 (finding advisal language that read "I understand and agree to the Terms & Conditions" did not indicate to the user that clicking continue would be construed as assent, where there was no checkbox next to the advisal language); *see also Godun*, 135 F.4th at 712-13 (declining to find contract was formed when advisal merely read "I agree to the Terms of Service" without a corresponding explanatory phrase indicating that the act of continuing would be construed as agreement); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1158-59 (9th Cir. 2025) (denying motion to compel arbitration when advisal language, in context with the rest of the sign-up flow, was ambiguous and did not satisfy second step of the test).

In addition, Defendant's privacy policy fails to disclose the specific disclosure of sensitive financial information challenged here, rendering it ineffective at establishing consent at the pleading stage. While the Privacy Policy says that Defendant will collect "personal" information from consumers, including financial information, the Policy does not explicitly disclose that the Defendant would *share* that personal financial information with the various tracking technologies. ECF No. 19, Watkins Decl, Ex. 15 at 4. To the contrary, the Policy indicates that the tracking technologies would collect and use information of a far less sensitive nature, such as the consumer's IP address and the URL of the web pages the consumer visited. *Id.* At no point does the Privacy Policy indicate that the consumer's income and estimated debt burden, for example, would be shared to third-party advertisers. Defendant fails to establish that "a reasonable user viewing the disclosures would . . . have concluded that they unambiguously disclosed the data collection at issue." *Calhoun*, 113 F.4th at 1147-48.

As to the extraneous materials relating to Meta that Defendant attached to its brief, the doctrine of incorporation by reference is not appropriate if the "document did not necessarily form the basis of the complaint" and "merely creates a defense." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable

claims." *Id*. Here, incorporation by reference is improper. Plaintiff's complaint does not rely on or ever refer to Meta's privacy policy, and he brings no claims against Meta.[3] Even if incorporation by reference were proper, Defendant relies on Meta's Privacy Policy to argue that Plaintiff must have assented to the data collection at issue here, but that does not follow. Plaintiff's consent to Meta collecting *some* data from Plaintiff's browsing activity (if he in fact consented, which Defendant has not established) does not necessarily convey Plaintiff's consent to Defendant's sharing of the financial information at issue here with Meta. Indeed, courts often deny motions to dismiss privacy claims against third-party website developers attempting to use Meta's privacy policy to establish consent, because an individual's separate consent to Meta's policy does not mean they consent to the Pixel's deployment in every case, or on every website. See, *e.g.*, *GoodRx Holdings, Inc.*, 2025 WL 2052302, at *9 (declining to consider Meta's privacy policies in motion to dismiss privacy claims against third-party web developers).

Finally, Defendant's argument about the relevance of the GLBA's requirements misconstrues Plaintiff's theory of harm, and the applicability of those requirements to Plaintiff's claims. Like HIPAA in the healthcare context, the GLBA and CalFIPA together inform and provide context to a website user's reasonable expectation of privacy in the information they convey to websites. Federal and state requirements on the disclosure of sensitive information is thus relevant to establishing a heightened expectation of privacy. Defendant's citation to a case relating to notice requirements under the Real Estate Settlement Procedures Act (RESPA) is thus inapposite, as the plaintiff in that case brought a separate cause of action under RESPA, and was attempting to recover directly under the statute for the company's failure to provide required notices at the loan's closing. *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010). Plaintiff does not separately bring a cause of action under the GLBA or seek to recover under the GLBA. Rather, the heightened consent requirements under the GLBA explain Plaintiff's expectation that the information he conveyed to Defendant would be kept private.

[3] Defendant's cited cases illustrate this point, because they all involve cases where Meta or Facebook were parties to the dispute. *Lloyd v. Facebook, Inc.*, No. 21-cv-10075-EMC, 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023); *Meta Platforms, Inc. v. Nguyen*, No. 21-cv-05002-TSH, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21, 2023); *Smith* v. *Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018).

### D. Plaintiff's Claims Under CIPA Section 631 Are Adequately Pled

Plaintiff adequately pleads a violation of CIPA Section 631(a), which prohibits four distinct patterns of conduct: 1) intentional wiretapping, 2) read[ing], or attempt[ing] to read, or to learn the content or meaning of a message, report, or communication while it is in transit, 3) using any information obtained by either act, and 4) "aid[ing], agree[ing] with, employ[ing], or conspir[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Pen. Code § 631(a). Plaintiff's claims under CIPA arise from the fourth pattern of conduct. Specifically, Plaintiff alleges that the tracking technologies read and analyzed the Class's application entries instantaneously upon submission (in violation of Section 631(a)'s second clause), and that this analysis was performed for the tracking technologies and Defendant's benefit.[4] FAC ¶¶ 29, 41, 49. Defendant's actions are the but-for cause of the unlawful interceptions here because the unlawful interceptions would not have occurred were it not for Defendant's failures to obtain valid consent. *Id.* at ¶ 100. Because Plaintiff adequately pleads a violation by the tracking technologies under the second theory of liability, these allegations are sufficient to state a claim against Defendant under an aiding and abetting theory.[5] *See Mata v. Zillow Grp., Inc.*, No. 24-cv-01095-DMS-VET, 2024 WL 5161955, at *7 (S.D. Cal. Dec. 18, 2024) (compiling cases).

#### 1. Plaintiff alleges contemporaneous interception and analysis.

Defendant argues that Plaintiff did not plead sufficient detail to allege simultaneous interception or that the communications were "read" while they were in transit. Both arguments

---

[4] Plaintiff does not dispute that Section 631(a)'s first clause is inapplicable to the conduct at issue here.

[5] Defendant's cursory argument that Section 631 "does not apply to a party to the communication" is inapposite here because Plaintiff alleges that Defendant violated Section 631(a) on an aiding-and-abetting theory, not a direct liability theory, *i.e.*, that its own interceptions were unlawful. In contrast, the plaintiff in *Ramos*, cited by Defendant, "outline[d] two theories of direct liability" that Gap improperly read its own marketing communications with its customers. 2025 WL 2144837, at *2. Here, though, "to state a claim for 'aiding and abetting' under section 631(a), plaintiff must allege the third party 'violated one of the first three clauses of section 631(a), and that [d]efendant aided, agreed with, employed, or conspired with that person or entity to commit those unlawful acts.'" *Doe v. Adventist Health Sys./West*, --- Cal.Rptr.3d ----, 2026 WL 2474859, at *12 (Cal. App. July 24, 2026) (quoting *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1112-14 (S.D. Cal. 2024)).

fail. A claim under the second clause of Section 631(a) requires that communications "must be acquired during transmission, not while it is in electronic storage." *Correia v. Lulu & Georgia, Inc.*, No. 3:26-cv-01186-GPC-JLB, 2026 WL 2343093, at *5 (S.D. Cal. Aug. 12, 2026) (quoting *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)). However, the standard for pleading simultaneity "is not overly burdensome." *Mata*, 2024 WL 5161955, at *6. Indeed, courts have frequently found "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102-DMS, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *D'Angelo v. Penny OpCo, LLC*, No. 23-cv-0981-BAS-DDL, 2023 WL 7006793, at *8 (S.D. Cal. Oct. 24, 2023). Put simply, it is sufficient at the pleading stage to allege how and when the interceptions occur. *Goldstein v. Rumble Inc.*, No. 25-cv-06304-MWF (SKX), 2026 WL 1406766, at *6 (C.D. Cal. Apr. 24, 2026).

Plaintiff's complaint alleges that Defendant installed at least two different tracking technologies onto its website, that the trackers are embedded into Defendant's website, and that the trackers instantaneously collect and analyze the Plaintiff's various interactions with Defendant's website, to the benefit of the Tracking Technologies and Defendant, and that the data shared with those trackers is visible through an inspection of web traffic. FAC ¶¶ 26-34, 41-55. Indeed, the complaint includes screenshots of code outputs that demonstrate the information conveyed to each tracking technology in real time, explanations of how data is transmitted from Defendant's website to the trackers, and marketing statements by Twilio describing the Segment Tracker as providing "real-time insights" to Segment clients. FAC ¶ 43. These allegations are more than sufficient at the pleading stage to allege simultaneous interception and analysis, including by the exact technologies at issue here. *M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at *4 (N.D. Cal. Sept. 16, 2024); *Goldstein*, 2026 WL 1406766, at *6; *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) (compiling cases);

*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 979 (C.D. Cal. 2023); *Adair v. Aylo USA Inc*., No. 2:25-cv-06351-WLH-KS, 2026 WL 1455464, at *8 (C.D. Cal. May 19, 2026).

Defendant cites to only four CIPA decisions in support of its arguments—each is inapplicable in that they were either decided at a later stage, on a full factual record, or relate to technology that merely records and stores consumer website activity, as opposed to analyzing and monetizing the data obtained by the tool's surveillance. *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025) (summary judgment); *Williams v. DDR Media, LLC*, No. 22-cv-03789-SI, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) (finding challenged technology "is more akin to a tape recorder vendor than an eavesdropper"); *Licea v. Am. Eagle Outfitters*, Inc., 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (technology was characterized as merely transcribing and storing chat conversations); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (allegations described "misuse of a recording, not interception"). *See also Briskin v. Shopify Inc*., No. 21-cv-06269-PJH, 2026 WL 2200418, at *5 (N.D. Cal. July 30, 2026) (declining to follow *Doe v. Eating Recovery* at the pleading stage).

Finally, Defendant incorrectly argues that the code screenshots in Plaintiff's complaint require timestamps to suggest simultaneity, citing *Sanchez v. Cnty. of Los Angeles*, as its only support. No. 17-cv-7218-DMG (JEMx), 2019 WL 4180014, at *3 (C.D. Cal. Apr. 24, 2019). Not only was that case decided at summary judgment, but the case is also unrelated to CIPA and is thus irrelevant to the question of what facts are required to plead simultaneity. The weight of relevant CIPA authority at the pleading stage is clear that plaintiffs do not need to provide such detailed evidence to survive a motion to dismiss. *M.G.*, 2024 WL 4219992, at *4; *Goldstein*, 2026 WL 1406766, at *6; *Tenet Healthcare Corp*., 789 F. Supp. 3d at 838; *Valenzuela.*, 686 F. Supp. 3d at 979; *Adair*, 2026 WL 1455464, at *8.

**2. Plaintiff alleges that Meta's Pixel intercepts the "content" of a communication.**

Defendant next argues that Plaintiff "fails to state a 631(a) claim as to Meta because the communications between him and Meta that he describes as captured generally did not involve

content." Mot. at 17. This argument fails for two reasons. First, Plaintiff alleges his communications with *J.G. Wentworth* were intercepted by Meta; he does not allege that he was intending to communicate anything to or with Meta. Second, this argument misrepresents Plaintiff's allegations as based solely on Meta's Pixel tracker as collecting Plaintiff's "c user" id. But Plaintiff's complaint instead alleges that Meta's Pixel collects and analyzes much more content, including "actions like when a consumer visits a particular website, clicks a button, fills out a form, web browser information, and an ID associated with the Facebook user called the 'c_user' id," and that the data is then analyzed to augment Meta's proprietary datasets. FAC ¶¶ 48-49. Indeed, the FAC later clarifies that as to Defendant, descriptive URLs revealing the specific product the consumer applied for are conveyed to Meta's Pixel tracker. *Id.* ¶ 56. Descriptive URLs that "reveal the specific document, product, or service that a user is viewing count as contents of communications." *Eating Recovery Ctr. LLC*, 806 F. Supp. 3d at 1116 (compiling cases); *Gray v. Luxottica of Am., Inc.*, No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566, at *5 (C.D. Cal. Dec. 16, 2024) (same); *Goldstein*, 2026 WL 1406766, at *5 (same).

### E. Plaintiff's ECPA Claims Are Not Reliant on Plaintiff's CIPA Claims

Defendant's four-line argument for dismissal of the ECPA claim does not identify any specific, independent basis for the claim's dismissal, instead simply stating that an ECPA claim must be dismissed whenever a CIPA claim is dismissed. And even if some of the issues under both statutes could be analyzed together,[6] Defendant's argument fails for the same reasons Defendant's arguments in favor of dismissing the CIPA claim also fail. Defendant has waived any other ECPA-specific arguments for dismissal by failing to raise them. *Architectureart, LLC v. City of San Diego*, No. 15-cv-1592-BAS-NLS, 2016 WL 1077124, at *3, n.3 (S.D. Cal. Mar. 18, 2016) (arguments not raised in initial motion to dismiss are waived).

---

[6] ECPA and CIPA are not coextensive, so dismissal of one does not automatically require dismissal of the other. As an example, the ECPA defines "interception" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device," 18 U.S.C. § 2510(4), while claims under Section 631(a)'s second clause require reading or learning the contents of a communication while it is in transit, not merely its acquisition. Cal. Pen. Code § 631(a). Both claims, while sometimes involving overlapping issues, are based on laws that are ultimately different from one another, and those differences must be given fair consideration.

### F. Plaintiff's Claims Under CIPA Section 632 Should Survive.

Defendant next argues that the communications intercepted here do not implicate Cal. Penal Code § 632, which only governs "confidential communication[s]," because communications over the internet carry with them a "presumption" against confidentiality. This position is directly undermined by the extensive allegations in the complaint explaining the basis for Plaintiff's expectation of confidentiality over his loan applications, namely, that federal and state law require that such information be kept confidential, subject to heightened informed consent requirements. FAC ¶¶ 15-25. Indeed, an individual's expectation of privacy is context-specific and often best assessed at a later stage in litigation. *See Correia*, 2026 WL 2343093, at *6 (describing the confidentiality inquiry under § 632 as "fact-intensive" and "often too difficult to resolve at the pleadings stage.") (collecting cases).

By contrast, the three cases that Defendant relies on all relate to interception of website *chat* functions where there was no allegation that the conversation topics were sensitive in any way. *See Revitch v. New Moosejaw, Inc., LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (noting that the communications related to "inquiring about items of clothing on a retail website"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (chat with customer service agent about home improvement products "readily distinguishable" from the collection of healthcare information); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (noting Facebook chats could easily be forwarded by chat recipients). Like medical information, financial information, such as debt burden and income, is reasonably considered private when shared in the context of an application for a financial product, especially the alternative financial services products offered by Defendant.

### G. The Interception Alleged Here Constitutes a Highly Offensive Intrusion

Defendant's only arguments in favor of dismissing Plaintiff's claim for intrusion upon seclusion rely on the same points it made in its prior sections— that the information intercepted by the Tracking Technologies is not sensitive. For the reasons articulated *supra*, that characterization is incorrect, and relies on a single case that is easily distinguishable due to the nature of the communications at issue here. Unlike the surveillance at issue in *Popa*, relating to

browsing behavior at a pet food supply website, the information disclosed to the tracking technologies here relates to highly sensitive personal financial information, such as income and debt burden. See *Popa*, 153 F.4th at 791 (comparing the monitoring to a store clerk's observing shoppers to identify aisles that are popular). Indeed, Defendant is required under federal and state law to obtain Plaintiff and the Class member's explicit consent from consumers before sharing information about the financial products Plaintiff and the Class members were seeking to obtain from Defendant, consent that Defendant failed to obtain. FAC ¶¶ 15-25. Those laws exist because the nature of the information protected by those laws is generally considered sensitive and private. 15 U.S.C. § 6801(a) ("It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."). *See also Garcia*, 825 F. Supp. 3d at 1169 (denying motion to dismiss invasion of privacy claim against bank and finding alleged disclosure to be "highly offensive" by current societal standards).

This case also differs from *Popa* because of the inferences that can be drawn from the nature of the financial services products and services Defendant offers. Namely, applying for any of the services J.G. Wentworth offers tends to reveal that a consumer is struggling financially, something that is highly stigmatized in our society, and often embarrassing. The FAC makes this point explicitly. FAC ¶¶ 1-3. Finally, Defendant argues, without citing any cases in support, that Plaintiff's alleged consent to Defendant's data sharing somehow undermines the offensiveness of the alleged intrusion. As explained *supra*, Plaintiff disputes that he consented to the alleged intrusion, and consent is an issue of fact to be decided on a fuller record. Indeed, the offensiveness of an intrusion is the kind of fact-specific inquiry that Courts consider difficult to decide on summary judgment, much less on the pleadings. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023) (denying motion for summary judgment on intrusion upon seclusion claim, as there remained triable issues on the offensiveness of the surveillance conduct).

**H. Plaintiff Has Adequately Alleged A Claim for Negligence**

Under California law, there are four elements to a negligence claim: (1) there must be a duty; (2) a breach of that duty; (3) causation; and (4) damages. *Wells Fargo Bank, N.A. v. Renz*,

795 F. Supp. 2d 898, 924 (N.D. Cal. 2011). Defendant's only challenge to Plaintiff's negligence claim arises from the fourth element, damages. Plaintiff's negligence claim asserts several theories of damages, including diminution of value in his personal information, as well as emotional distress from the inappropriate and intrusive targeted advertisements for debt settlement and debt relief services he now receives. FAC ¶ 120. "Courts in the Ninth Circuit and around the country have accordingly held that the diminished value of sensitive health or personal information supports a negligence claim." *M.R. v. Salem Health Hosps. & Clinics*, No. 6:23-cv-01691-AA, 2024 WL 3970796, at *8 (D. Or. Aug. 28, 2024) (compiling cases). *See also In re Facebook Privacy Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014).

Defendant also invokes the economic loss doctrine, while ignoring that the doctrine only operates to exclude purely economic harms when they are unaccompanied by other forms of harm. *S. California Gas Leak Cases*, 7 Cal. 5th 391, 397 (2019) (explaining economic loss doctrine). The economic loss rule does not apply when economic harms are alleged in conjunction with other harms, such as loss of time and risk of embarrassment, as is the case here. *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 911 (N.D. Cal. 2024) (addressing economic loss doctrine in the context of a data breach). Similarly, contrary to Defendant's cited case, an increase in intrusive, spam-like advertisements about a sensitive topic can give rise to emotional distress damages cognizable under a negligence theory. *Jimenez v. OE Fed. Credit Union*, No. 24-cv-02746-JST, 2025 WL 2402137, at *4 (N.D. Cal. Aug. 19, 2025) (distress from receiving increase in spam calls purporting to involve credit and loans cognizable).

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety. In the alternative, should the Court grant any portion of the motion, Plaintiff respectfully requests leave to amend.

Respectfully submitted,

**RAMADAN ROUBY,** individually and on behalf of all others similarly situated

Dated: September 4, 2026

By: */s/ Nicole Cabañez*

Yaman Salahi (SBN 288752)
yaman@salahilaw.com
Nicole Cabañez (SBN 365099)
nicolec@salahilaw.com
Taylor Applegate (SBN 357742)
taylora@salahilaw.com
**SALAHI PC**
505 Montgomery Street, 11th Floor
San Francisco, California 94111
Tel: (415) 236-2305

Albert J. Plawinski (admitted pro hac vice)
albert@plawinski.law
**PLAWINSKI, PLLC**
2101 Pearl Street
Boulder, Colorado 80302
Tel: (303) 720-7095